IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| ANGEL CARTAGENA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:21cv539 |
| ) | |
| ALLEY LOVELL, *et al*. ) | |
| ) | |
| Defendants. ) | |

DEFENDANTS' MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6) Allie Lovell, T. Dowell, B. Kanode, Kilbourne, Dr. Haynes, Harold Clarke, David Robinson, Eric Madsen, and Carl Manis state in support of their Motion to Dismiss the First Amended Complaint ("FAC") (ECF 14) of Angel Cartagena:

ALLEGATIONS OF THE COMPLAINT

Plaintiff, a Virginia inmate proceeding *pro se* brings this action pursuant to 42 U.S.C. §1983 and the Eighth and Fourteenth Amendments as well as under the Americans with Disabilities Act and the Rehabilitation Act of 1973. He seeks to allege that his due process rights were violated when he was placed in the Secure Diversionary Treatment Program ("SDTP") unit while housed at River North Correctional Center ("River North"). (ECF 14 ¶4).

According to the FAC, Defendant Clarke is Director of the Virginia Department of Corrections ("VDOC"); Defendant Robinson is Chief of VDOC's Corrections; Defendant Lovell is the Director of the SDTP units of VDOC; Defendant Madsen is "charged with Institutional Classification/Transfers" for VDOC; Defendant Dowell is a unit manager of SDTP units A-I and

A Z, at River North; Defendant Kanode is the Warden of River North; Defendant Dr. Haynes is the psychiatrist over the River North SDTP unit; Defendant Kilbourne is River North's Chief of Housing and Programming; and Defendant Manis is the Regional Administrator for VDOC's Western District.  (ECF 14 ¶¶4, 6,16-20, 25, 28).  Plaintiff alleges that Defendants Lovell, Dowell, Haynes, and Kilbourne are also members of the Multi-Institutional Treatment Team ("MITT").  (ECF 14 ¶¶20, 23).  According to the FAC, the MITT oversees all the SDTP units. (ECF 14 ¶20).

Plaintiff alleges that at the age of twelve, he was diagnosed with serious mental illness ("SMI").  (ECF 14 ¶4).  He claims his "serious mental disabilities" include "Borderline Personality Disorder, Anti-Social Personality Disorder, Schizo-Affective Disorder, Schizophrenia, [and] Bipolar Disorder Type II."  (ECF 14 ¶7).  He claims that he "has been on psychotropic medicines for his serious mental disabilities" since the age of 12.  (ECF 14 ¶7).  He alleges that Defendants "have actual knowledge of Plaintiff's well documented history of suffering from ("SMI")."  (ECF 14 ¶7).

Plaintiff alleges that on or about November 22, 2019, VDOC, "with specific respect to the authority and approval" of Defendants Lovell and Madsen, placed Plaintiff in River North's SDTP unit where he was housed for 18 months and 5 days.  (ECF 14 ¶4).  The SDTP unit, according to the FAC, is more restrictive than housing for general population.  (ECF 14 ¶6). Plaintiff alleges that whenever an inmate housed in the SDTP exits his cell, he is strip-searched, placed in shackles and handcuffs attached to a dog leash, and escorted by two prison officers. (ECF 14 ¶10).  According to the FAC, when SDTP inmates participate in programming, they are handcuffed and shackled to secured chairs.  (ECF 14 ¶10).  Plaintiff alleges that for outside recreation, SDTP inmates "are caged in segregation recreation cages."  (ECF 14 ¶10).  SDTP

inmates, according to the FAC, are not allowed to attend religious services or hold a job.  (ECF 14 ¶10).  Plaintiff alleges that the "harsh conditions of confinement[] and sensory deprivation" were devastating and that while he was housed in SDTP he "lack[ed] physical and social points of reference to ground [himself] . . . into reality itself."  (ECF 14 ¶10).

On May 26, 2021, Plaintiff was transferred out of River North to Wallens Ridge State Prison ("Wallens Ridge").  (ECF 14 ¶11).  According to the FAC, while at Wallens Ridge, "Plaintiff began to suffer from psychosis d[ue] to being isolated and he began to display bizarre behavior and became suicidal."  On August 31, 2021, Plaintiff was transferred to Marion Correctional Treatment Center.  (ECF 14 ¶11).  By December 11, 2021, according to Plaintiff's Notice of Change of Address, he had been returned to Wallens Ridge.  (ECF 15).

Plaintiff's allegations of constitutional violations relate solely to his placement in the SDTP unit at River North.  He claims that his Fourteenth Amendment due process rights were violated when he was involuntarily placed in the SDTP without "a proper judicial order."  (ECF 14 ¶¶5, 23).  He claims that he had a right to "a judicial Due Process hearing," with notice, he had a right to call witnesses and to appeal the decision, and a right not to participate in mental health treatment.  (ECF 14 ¶5).  Plaintiff also claims that Defendants' conduct violated his substantive due process right in "safety, freedom from undue bodily restraints" and "treatment recommended for him by a qualified professional."  (ECF 14 ¶¶16, 18, 21, 23, 25, 30).  He alleges that Defendants Clarke and Robinson additionally violated his Eighth and Fourteenth Amendment rights by "fail[ing] to make policies expressly prohibiting Plaintiff in detention in a licensed psychiatric unit [SDTP] . . . without a proper judicial order where Plaintiff [wa]s involuntarily housed without his consent."  (ECF 14 ¶30).

Plaintiff claims that all Defendants violated his First Amendment religious exercise rights

when he was detained in the SDTP unit. (ECF 14 ¶12). He alleges that while housed in SDTP, he was not allowed to "exercise his faith." (ECF 14 ¶12).

Plaintiff claims that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment when he was placed in SDTP for 18 months and 5 days. (ECF 14 ¶14). He claims that placement in the SDTP unit caused him "severe mental anguish and emotional distress" and "grievous physical injuries." (ECF 14 ¶¶16, 18, 30).

Plaintiff alleges that all Defendants discriminated against him in violation of the Americans with Disability Act and the Rehabilitation Act of 1973 "by subjecting him to unnecessary isolation when treating professionals recommended treatment in a less restrictive setting." (ECF 14 ¶30).

## Relief Sought

Plaintiff seeks compensatory damages of $80,000 against Defendants both in their individual and official capacities. (ECF 14 ¶33). He also seeks an injunction prohibiting Defendants from ever detaining him again the SDTP. (ECF 14 ¶34).

## Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) tests whether a complaint states a cause of action upon which relief can be granted. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if the complaint contains "factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556); *see*

*also Francis v. Giacomelli*, 588 F.3d 186 (4th Cir. 2009).  The analysis of a complaint's plausibility is context-specific and requires "the reviewing court to draw on its judicial experience and common sense."  *Francis*, 588 F.3d at 193.  Although the Court must accept the plaintiff's factual allegations as true, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.  *Twombly*, 550 U.S. at 570.

Further, to state a claim under §1983, a plaintiff must plead that each defendant, through his or her own individual actions, violated the Constitution.  *See Iqbal*, 556 U.S. at 676.  Because a §1983 action seeks to impose personal liability, the plaintiff must allege factual detail about each defendant's personal involvement.  *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017)).  That is, it must "make clear exactly *who* is alleged to have done *what* and to *whom*, to provide each individual with fair notice as to the basis of the claims against him . . . as distinguished from collective allegations."  *Robbins v. Okla. Ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in original).  Stated differently, as complaint must give the defendants "fair notice" of both the claims against them "*and the grounds upon which [they] rest[]*."  *Twombly*, 550 U.S. at 555 (emphasis added) (omission in original) (internal quotations omitted).  Further, Defendants cannot be held liable under §1983 on a theory of *respondeat superior*.  *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).

<u>ARGUMENT</u>

For the following reasons, the Court should dismiss the FAC.

I.

<u>Plaintiff Fails to State a Due Process Claim</u>

As his primary claim, Plaintiff asserts that his due process rights were violated when he

was placed and kept in the SDTP unit without being provided "a judicial Due Process hearing for involuntary commitment," a "notice or right to appeal," the opportunity to "attend, make testimony, defend or provide witnesses against detention," and the option of "not participat[ing] in mental health treatment, care, and services." (ECF 14 p.3). For the following reasons, Plaintiff's due process claims should be dismissed.

      A.  <u>Plaintiff Fails to Allege Facts That Would Establish a Protected Liberty Interest</u>

To prevail on a §1983 claim brought under the Fourteenth Amendment, a plaintiff must demonstrate (1) the existence of a protected life, liberty, or property interest and (2) the failure of defendants to afford him adequate process to protect that interest. *See Smith v. Collins*, 964 F.3d 266, 281 (4th Cir. 2020). He must allege facts that will show both but-for causation and proximate causation. *See Gilliam v. Sealey*, 932 F.3d 216, 238 (4th Cir. 2019) (internal citations omitted). The plaintiff must also plead a sufficiently culpable state of mind on the part of the defendant because "[t]he protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials." *Davidson v. Cannon*, 474 U.S. 344, 348 (1986). If a plaintiff fails to plead adequately a protectable liberty interest, the due process inquiry ends. There is no need to examine what process is due if a constitutionally protected interest has not been identified. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (stating "[w]e need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest").

In the prison context, there are two types of liberty interests that trigger the due process protections of the Fourteenth Amendment. *See Sandin v. Conner*, 515 U.S. 472 (1995). The first arises directly from the language of the Fourteenth Amendment. A prisoner has a liberty interest in freedom from restraint that "exceed[s] the sentence in such an unexpected manner as to give

rise to protection by the Due Process Clause of its own force." *Id.* at 484 (citing *Vitek v. Jones*, 445 U.S. 480, 493 (1980) (transfer to mental hospital); *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (administration of psychotropic drugs)). The second type of interest arises "from an expectation or interest created by state laws or policies." *Wilkinson*, 545 U.S. at 221. In order to establish such a state-created liberty interest, a plaintiff must show (1) "that there is 'a basis for an interest or expectation in state regulations for avoiding such confinement," and (2) "that the conditions 'impose[] atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Smith*, 964 F.3d at 275 (quoting *Prieto v. Clarke*, 780 F.3d 245, 249-50 (4th Cir. 2015)).

The involuntary transfer of a state prisoner to a mental hospital implicates a liberty interest directly created by the due process clause of the Fourteenth Amendment. *See Vitek*, 445 U.S. 480.[1] As the Supreme Court explained, this liberty interests arises for two reasons. First, a prisoner has a reasonable expectation "that he would not be transferred to a mental hospital without a finding that he was suffering from a mental illness for which could not secure adequate treatment in the correctional facility." *Id.* at 488. Secondly, characterizing a prisoner "as a mentally ill patient and transferring him to [a mental hospital] had some stigmatizing consequences which, together with the mandatory behavior modification treatment to which [the prisoner] would be subject . . . constituted a major change in the conditions of confinement amounting to a grievous loss that should not be imposed without the opportunity for notice and

---

[1] The Supreme Court also found the transfer to a mental hospital implicated a state-created liberty interest, but this conclusion was reached through a methodology later rejected by the *Sandin* Court. This methodology, espoused in *Hewitt v. Helms*, 459 U.S. 460, 468 (1983), involved looking for mandatory language in state regulations. In 1995, the Supreme Court abandoned the *Hewitt* methodology as "an approach that in practice is difficult to administer and which produces anomalous results." *Sandin v. Conner*, 515 U.S. 472, 483 at n.5 (1995).

7

an adequate hearing."[2] In reaching this conclusion, the Court noted that "[m]any of the restrictions on the prisoner's freedom of action at the [mental hospital] by themselves might not constitute the deprivation of a liberty interest retained by a prisoner." *Id.* at 494 (citing *Wolff v. McDonnell*, 418 U.S. 539, 572 at n.19 (1974)).

Unlike a transfer to a mental hospital, a prisoner's transfer within a prison or from one prison to another, without more, does not violate his due process rights. A prisoner does not have a protected liberty interest against an involuntary transfer "to less amenable and more restrictive quarters for nonpunitive reasons." *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (*overruled on other grounds* by *Sandin*, 515 U.S. 472). Nor does a prisoner have a constitutional right "to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution." *Pevia v. Hogan*, 443 F. Supp. 3d, 612, 634-35 (D. Md. 2020) (citing *McKune v. Lile*, 536 U.S. 24, 26 (2002) (stating that the "decision where to house inmates is at the core of prison administrators' expertise"); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (holding that the Due Process Clause does not "protect a duly convicted prisoner against the transfer from one institution to another within the state prison system"). As a general rule, a prisoner "do[es] not have a liberty interest in a particular security classification or in freedom from segregation." *Halter v. Hutcheson*, No. 7:20cv00219, 2021 U.S. Dist. LEXIS 60049, at *13 (W.D. Va. Mar. 30, 2021) (citing *Shelton v. Angelone*, 183 F. Supp. 2d 830, 838-

---

[2] Although the "mandatory behavior modification treatment" referenced in *Vitek* is not defined, at least one court has "f[ound] that the 'behavioral modification' referred to in *Vitek* was of the kind that necessarily involved psychiatric treatment, including, but not limited to the involuntary administration of psychotropic drugs." *Dantzler v. Beard*, No. 05cv1727, 2007 U.S. Dist. LEXIS 96919, at *10-11 (W.D. Pa. Dec. 6, 2007). In *Dantzler*, the district court found that the behavior modification at issue resembled other inmate programs such as anger management or substance abuse programs in which prisoners are accorded privileges for successful completion of program requirements.

8

39 (W.D. Va. 2002)).

Plaintiff has not sufficiently pled a liberty interest protected by the Fourteenth Amendment. Unlike the prisoner in *Vitek*, Plaintiff here was not transferred to a mental health hospital because he could not be treated at the prison facility or subjected to the potential stigmatization associated with a transfer to a mental hospital. He was placed in the SDTP housing unit at River North.[3] As such, the transfer was from one prison to another or from one housing unit to another.[4] Plaintiff had no liberty interest arising directly from the language of the Fourteenth Amendment to be free from transfer to the SDTP unit.

Further, Plaintiff has not sufficiently pled entitlement to a state-created liberty interest. He cannot show that there is 'a basis for an interest or expectation in state regulations for avoiding such confinement." Virginia statutes governing involuntary commitment apply to commitment to a "facility," not to a housing assignment within a prison. Section 37.2-100 of the Code defines facility as "a state or licensed hospital, training center, psychiatric hospital, or other type of residential or outpatient mental health or developmental services facility. When modified by the word 'state,' 'facility' means a state hospital or training center operated by the Department [of Behavioral Health and Developmental Services], including the buildings and land associated with it." Under this definition, neither River North nor any of its housing units is a mental health or developmental services facility. Thus, for a duly convicted inmate within

---

[3] *See* ECF 14 ¶25 (Plaintiff was "sent to the (S)ecure Diversionary Treatment Program unit in R.N.C.C."). Although Plaintiff characterizes SDTP as "a licensed psychiatric unit funded by the Federal Government," he neither alleges facts nor cites law that would support this conclusory allegation. In considering a motion to dismiss, courts need not accept "legal conclusions drawn from the facts," nor "unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

[4] The FAC alleges that Plaintiff was placed in the SDTP unit on or about November 22, 2019, but it does not state whether he was already housed at River North or had been transferred directly in the SDTP unit from another facility.

VDOC's custody, Virginia's commitment statute does not give rise to an interest or expectation for avoiding confinement in a particular housing unit in River North.

Moreover, Plaintiff has not pled facts that would support the second element necessary to establish a state-created liberty interest: that placement in the SDTP constituted an atypical and significant hardship.  Courts in the Fourth Circuit consider three factors to determine whether the confinement imposed an atypical and significant hardship: "'(1) the magnitude of the confinement restrictions; (2) whether the administrative segregation is for an indefinite period; and (3) whether assignment to administrative segregation had any collateral consequences on the inmate's sentence.'" *Smith*, 964 F.3d at 268 (denying summary judgment where there were material factual disputes about all three factors) (quoting *Incumaa v. Stirling*, 791 F.3d 517, 530 (4th Cir. 2015)).  Even assuming, for the purposes of this motion to dismiss, that Plaintiff sufficiently alleged facts supporting the first factor, he has alleged no facts in support of the second or third factor.  Plaintiff was not indefinitely housed in the SDTP unit.  He was transferred out after 18 months and five days according to the FAC.  Plaintiff has alleged no facts that would show that his assignment to the SDTP unit had an impact on his sentence.  He was placed in the SDTP unit because of mental illness, not for punishment.  Given this fact, there is no basis to infer that the placement affected his sentence.

Plaintiff's allegation that he did not have the option not to participate in "mental health treatment, care, and services" also does not rise to the level of a constitutionally protected liberty interest.  He has not alleged facts necessary to establish that his participation in mental health treatment, care, and services imposed an atypical and significant hardship in relation to the ordinary incidents of prison life as is required to establish a liberty interest.  Moreover, "prisons frequently maintain treatment and behavioral modification programs (such as anger management

10

or alcohol abuse classes) that have long withstood legal challenge." *Love v. McKune*, 33 Fed. Appx. 369 (10th Cir. 2002).

For these reasons, Plaintiff's due process claims should be dismissed.

B. <u>Plaintiff Fails to Allege Sufficient Personal Involvement by Any Defendant</u>

Even had Plaintiff sufficiently pled a protected liberty interest, he fails to allege the particular acts of constitutional violation attributable to each Defendant.

<u>Clarke and Robinson</u>

Plaintiff alleges that Director Clarke and Chief of Operations Robinson "fail[ed] to make policies prohibiting Plaintiff in detention in a licensed psychiatric unit titled, (S)ecure Diversionary Treatment Program, without a proper judicial order." (ECF 14 ¶30). Other than through broad and conclusory allegations against all Defendants, Plaintiff does not assert any other conduct by Clarke or Robinson. In the absence of allegations of personal conduct on the part of Clarke or Robinson, Plaintiff fails to allege facts sufficient to establish their personal liability under §1983. Accordingly, Plaintiff fails to state a due process claim against them in their individual capacities.

<u>Lovell & Madsen</u>

Plaintiff alleges that he "was detained in the S.D.T.P. unit by the VA.D.O.C. with specific respect to the authority and approval by Defendant(s) Alley [sic]Lovell Director of (3) S.D.T.P. / I.D.T.P and by Eric Madsen who's in charge of Central Classification Services / transfer assignment of the seriously mentally ill prisoners." (ECF 14 ¶4; *see also* ¶¶17, 18). Plaintiff alleges that Lovell was a member of the Multi-Institutional Treatment Team ("MITT"), which "oversee[s]" the SDTP. (ECF 14 ¶20). He also claims that Lovell "continuously, consciously, and willfully opted to keep Plaintiff in the S.D.T.P. unit," but does not allege

11

personal conduct by Lovell supporting this conclusion. (ECF 14 ¶17). With these allegations, Plaintiff attempts to allege personal liability against Lovell and Madsen only for their role in reviewing decisions or recommendations by others, not their personally ordering his placement in the SDTP unit or placing him in that unit. Accordingly, Plaintiff fails to state a due process claim against Lovell or Madsen in their individual capacities.

### Manis & Kanode

Plaintiff seeks to impose supervisory liability against Regional Administrator Manis and Warden Kanode. (ECF 14 ¶¶17, 20). He alleges that Manis should be "held liable for his subordinates['] actions of misconduct." (ECF 14 ¶17). As he did against Lovell, Plaintiff alleges that Manis "continuously, consciously, and willfully opted to keep Plaintiff in the S.D.T.P. unit," but does not allege personal conduct by Manis supporting this conclusion. (ECF 14 ¶17). Plaintiff seeks to hold Warden Kanode liable for his alleged "knowing acquiescence in the . . . unconstitutional behavior of his subordinates." (ECF 14 ¶20). Plaintiff's additional allegations linked to Kanode appear to claim that he failed to train or supervise his subordinates or "official[ly] acquiesce[d] in the continued existence of prison conditions." (ECF 14 ¶20). These allegations fail to plead the elements of a supervisory claim.

To state a claim of supervisory liability under §1983, a plaintiff must allege facts sufficient to show: "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices[;] and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v.*

*Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks and citations omitted). To adequately plead the first element, a plaintiff must allege facts that show "that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (internal quotation marks and citations omitted). To adequately plead the second element, a plaintiff must allege facts that show "a supervisor's continued inaction in the face of documented abuses." *Id.* As a general rule, "mere knowledge of [a constitutional violation] does not suffice" to establish personal liability under §1983. *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018).

Plaintiff has failed to allege facts that would satisfy the requirements of pleading a claim for supervisory liability. At most, he makes the conclusory allegation that "Kanode was on constructive notice and had actual knowledge of Plaintiff's Constitution[al rights] being violated." (ECF 14 ¶20). His allegations do not touch widespread conduct or a documented history of abuses. For these reasons, Plaintiff fails to state a due process claim against Manis or Kanode in their individual capacities.

Haynes, Dowell, & Kilbourne

According to the FAC, Haynes was the psychiatrist of the SDTP unit, Dowell was a unit manager of SDTP units A-I and A Z, and Kilbourne was River North's Chief of Housing and Programming. (ECF 14 ¶¶4, 16). Plaintiff alleges that Haynes, Dowell, and Kilbourne "failed to provide the less [sic] restrictive environment such as a general population setting," and that they were members of the MITT, who, according to the FAC, "act as the overseers of all the S.D.T.P. / I.D.T.P. units." (ECF 14 ¶¶16, 20, 23). Plaintiff also alleges that Dowell and Kilbourne "continued to keep Plaintiff within the S.D.T.P. unit without a proper judicial order." (ECF 14

13

¶23).

Plaintiff fails to make factual allegations of these Defendants' personal participation in evaluating or treating Plaintiff or in placing Plaintiff in the SDTP unit in the first place. He fails to make factual allegations that Defendants had personal knowledge of any alleged risk in Plaintiff's being housed in the SDTP. For these reasons, Plaintiff fails to state a due process claim against Haynes, Dowell, or Kilbourne in their individual capacities.

For these reasons, Plaintiff's due process claims should be dismissed.

## II.

### Plaintiff Fails to State a Religious Exercise Claim

To state a claim under the Free Exercise Clause of the First Amendment, a plaintiff must show (1) that he holds a sincere religious belief, and (2) that a government action has substantially burdened his ability to exercise his religion. *See Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981). "[A] prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." *Holt v. Hobbs*, 574 U.S. 352, 360-361 (2015) (citing *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 717 n.28 (2014)). Government action "substantially burdens" religious exercise when it "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *See Couch v. Iabe*, 679 F.3d 197, 200 (4th Cir. 2012). The plaintiff must establish that the substantial burden was a product of a defendant's conscious or intentional interference with religious rights." *Wall v. Wade*, 741 F.3d 492, 500 at n.11 (4th Cir. 2014).

Plaintiff has failed to plead either prong of a free exercise claim. He has not alleged facts that would establish that he holds a sincere religious belief or how he exercises that belief. In the absence of these allegations, Plaintiff fails to allege facts that would show that his ability to

exercise his religion was substantially burden.

Moreover, Plaintiff has not alleged personal conduct by any Defendant that would have substantially burdened his religious exercise or that any acted with the requisite state of mind necessary to support a First Amendment violation.

For these reasons, the First Amendment claim should be dismissed.

### III.

### Plaintiff Fails to State a Cruel and Unusual Punishment Claim

To establish an Eighth Amendment violation, a plaintiff "must prove two elements: (1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson*, 501 U.S. at 298-300).

To satisfy the objective element, a plaintiff must show "significant physical or emotional harm, or a grave risk of such harm." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995). Long-term confinement in administrative segregation does not, of itself, violate the Eighth Amendment. *See Mickle v. Moore (In re Long Term Administrative Segregation of Inmates Designated as Five Percenters)*, 174 F.3d 464, 471-72 (4th Cir. 1999). In *Mickle*, the plaintiffs alleged that they were confined to their cells twenty-three hours a day, allowed no radio or television, allowed only five hours of exercise per week, and not allowed to participate in prison work, school, or study programs. The prisoners had been segregated for over three years and had

no expectation of release in the foreseeable future. The Fourth Circuit held that these conditions did not violate the Eighth Amendment. The Fourth Circuit explained, "the restrictive nature of high-security incarceration does not alone constitute cruel and unusual punishment." *Id.* at 471. The Court noted that "[d]epression and anxiety are unfortunate concomitants of incarceration; they do not, however, typically constitute the 'extreme deprivations . . . required to make out a conditions-of-confinement claim.'" *Id.* at 472 (quoting *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992)).[5]

To satisfy the second prong of the subjective test, a plaintiff must show that Defendants disregarded the risk by failing to take reasonable measures to abate it. In other words, he must establish "deliberate indifference." "Deliberate indifference is a very high standard — a showing of negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). The prison officials "must have *actually known that their response was inadequate* to address [the plaintiff's] needs." *Iko*, 535 F.3d at 242 (emphasis in original).

Plaintiff's allegations fail to state a claim of cruel and unusual punishment. As an initial matter, Plaintiff was placed not placed in the SDTP unit as a means of punishing him. Secondly, the conditions alleged were not so isolating as to be "cruel and unusual" under the Eighth Amendment. Although Plaintiff was subjected to severe security restrictions, he was afforded some social privileges including participation in programming outside of his cell, outside

---

[5] The Fourth Circuit in *Porter v. Clarke*, 923 F.3d 357 (4th Cir. 2019), distinguished the facts before it from those of *Mickle* and held that the solitary confinement of death row inmates created a substantial risk of serious psychological and emotional harm. The plaintiffs in *Porter*, unlike those in *Mickle*, were placed in segregation based on their sentence alone, not on their in-prison conduct. In *Porter*, the death-row inmates had no avenue for removing themselves from segregation. Here, Plaintiff has not alleged facts that would place him within the *Porter* conditions or even within the *Mickle* conditions where the Fourth Circuit declined to find a substantial risk of harm from administrative segregation.

recreation, and four telephone calls a month.  (ECF 14 ¶10).

Even had Plaintiff met the requirements to plead the subjective prong of an Eighth Amendment claim, he fails to plead sufficiently the scienter element.  Except in conclusory terms, Plaintiff fails to allege facts that would establish that any Defendant had actual knowledge of the alleged risks to Plaintiff from placement in the SDTP or actually known that their response to any such risks was inadequate.[6]

For these reasons, Plaintiff's Eighth Amendment claim should be dismissed.

IV.

Any ADA or RA Claim Should Be Dismissed

Plaintiff cursorily references violations of his rights under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.  Both statutes prohibit discrimination against someone because of his disability.  Title II of the ADA provides that "no qualified individual with a disability shall by reason of such disability be excluded from participation in or denied the benefits of the services, programs, or activities of such public entity, or be subjected to discrimination by any such entity."  42 U.S.C. §12132.  The relevant portion of the RA states that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial

---

[6] Although Plaintiff alleges that "[a]ll Defendant(s) mentioned herein have actual knowledge of Plaintiff's lengthy well documented history of suffering from [serious mental illness]," none of his factual allegations supports this claim.  "Actual knowledge" is "'[r]eal knowledge as distinguished from presumed knowledge or knowledge imputed to one.'" *Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 776 (2020) (quoting Ballentine's Law Dictionary 24 (3d ed. 1969)).  "Actual knowledge" is "[d]irect and clear knowledge, as distinguished from constructive knowledge."  Black's Law Dictionary 1043 (11th ed. 2019).  Plaintiff has not alleged that any of the Defendants—and certainly not any of the non-medical Defendants—personally evaluated and treated him.

assistance. . . ." 29 U.S.C. §794(a). To state a claim under either the ADA or the RA, a plaintiff must allege facts that demonstrate that (1) he is a qualified individual with a disability; (2) he was excluded from participation or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005). Assuming, solely for purposes of a motion to dismiss, that Plaintiff is a qualified individual with a disability and that his placement in the SDTP unit constituted an exclusion or denial of benefits, Plaintiff nonetheless has not alleged facts sufficient to establish that his claimed discrimination was because of his alleged disability. Accordingly, he has not pled the elements of an ADA or RA claim.

Further, the ADA and RA claims against the individual defendants must be dismissed. *See Baird ex rel. Baird v. Rose*, 192 F.3d 462, 471-72 (4th Cir. 1999) (recognizing that the RA and ADA do not permit actions against people in their individual capacities).

For these reasons, Plaintiff's ADA and RA claims should be dismissed.

V.

Plaintiff's Official-Capacity Claims for Damages Should Be Dismissed

Official-capacity defendants enjoy the protection of the Commonwealth's sovereign immunity. *See Lytle v. Griffith*, 240 F.3d 404, 408 (4th Cir. 2001). "[I]ndividuals sued in their official capacity as state agents cannot be held liable for damages or retrospective relief." *Lewis v. Bd. of Educ. Of Talbot Cty.*, 262 F. Supp. 2d 608, 612 (D. Md. 2003). Accordingly, Defendants, sued in their official capacities as VDOC officials, cannot be held liable for damages or retrospective relief.

For these reasons, the official-capacity claims against Defendants for damages should be

18

dismissed.

## VI.

### Plaintiff's Individual-Capacity Claim for Injunctive Relief Should Be Dismissed

Plaintiffs may not sue individual-capacity defendants for injunctive relief. *See Chadwell v. Brewer*, 59 F. Supp. 3d 756, 761 (W.D. Va. 2014) (dismissing injunctive relief against officials in their individual capacities because they cannot, acting in their individual capacities, effect the relief sought).

For these reasons, the individual-capacity claims against Defendants for injunctive relief should be dismissed.

### Conclusion

For these reasons, the FAC should be dismissed.

Respectfully submitted,

ALLIE LOVELL, T. DOWELL, B. KANODE, KILBOURNE, DR. HAYNES, HAROLD CLARKE, DAVID ROBINSON, ERIC MADSEN, AND CARL MANIS

By: /s/ D. Patricia Wallace
D. Patricia Wallace, VSB #92964
Assistant Attorney General
Office of the Attorney General
Criminal Justice & Public Safety Division
202 North 9th Street
Richmond, Virginia 23219
804-786-2912 (Tel.) -4239 (Fax)
Email: pwallace@oag.state.va.us

## CERTIFICATE OF SERVICE

I hereby certify that on the December 27, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and that I will serve an ECF date-stamped copy of the foregoing on the following *pro se* Plaintiff:

Angel Cartagena, #1078842
Wallens Ridge State Prison
272 Dogwood Drive
P.O. Box 759
Big Stone Gap, VA 24219

By:   /s/ D. Patricia Wallace
D. Patricia Wallace, VSB #92964
Assistant Attorney General
Office of the Attorney General
Criminal Justice & Public Safety Division
202 North 9th Street
Richmond, Virginia 23219
804-786-2912 (Tel.) -4239 (Fax)
Email:  pwallace@oag.state.va.us